# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

1ST SOURCE BANK,           )
                                    )
       Plaintiff,          )
                                    )
v.                          )     Cause No. 3:15-CV-261
                                    )
JOAQUIM SALLES LEITE NETO and   )
WELLS FARGO BANK NORTHWEST,   )
NATIONAL ASSOCIATION, solely as   )
Owner Trustee under a Trust Agreement   )
Dated as of June 25, 2009,        )
                                    )
       Defendants.      )

## OPINION AND ORDER

This matter is before the Court on the Motion to Enjoin Plaintiff From Maintaining its Litigation in Brazil filed by Defendant Joaquim Salles Leite Neto (DE 42). Plaintiff 1st Source filed a response in opposition (DE 53), Neto filed a reply (DE 56), and 1st Source filed a sur-reply (DE 58). For the reasons discussed below, the Motion to Enjoin is DENIED.

### DISCUSSION

The underlying facts of this case are mostly undisputed. In 2009, a "business entit[y]" owned or controlled by Defendant Neto, "an international businessman residing in Sao Paolo, Brazil[,] . . . purchased an aircraft, a Dassault Falcon 2000, for his use in various business endeavors." Defendant's Memorandum in Support of Motion to Enjoin (DE 43), p. 2. Neto registered the aircraft in the United States "[i]n order to facilitate the aircraft's use in international business travel." *Id*. Since Neto is a foreign national he could not register the plane in the U.S. himself, so "to ensure the eligibility of the aircraft for registration according to FAA rules in 2010, the aircraft was contributed to an existing trust." *Id*. Defendant Wells Fargo Bank

"serves as the Owner Trustee of the trust that holds title to the aircraft." *Id.* Wells Fargo, in turn, "borrowed $6 million from 1st Source and pledged the aircraft as collateral. . . . On January 28, 2011, Neto signed the personal guarantee giving rise to this lawsuit." *Id.* The plane was seized on June 20, 2012, by "[t]he federal tax authority of Brazil . . . in connection with an investigation into an alleged scheme to avoid paying Brazilian import tax on the aircraft." Plaintiff's Response (DE 53), p. 2.[1] Even after the plane was seized, Neto paid on the note for quite a while, to the tune of $2,869,807.29 in total he claims, but stopped making payments after December 29, 2014. Defendant's Memorandum, p. 3. "On October 9, 2014, 1st Source issued a Demand and Acceleration Notice to [Wells Fargo] and Neto." Plaintiff's Response, p. 2; Complaint, Exh. 4 (DE 1-4), pp. 1-2. On March 29, 2016, "1st Source's attorney in Brazil sent a notice of default to Neto[.]" *Id.*, p. 3; Plaintiff's Exh. B (DE 53-2), ¶ 10.1st Source "filed suit on an insurance claim and recovered at least $3,075,000 to mitigate its damages." *Id.*, p. 2. 1st Source brought this action on June 24, 2015, seeking to recover the sum of $2,057,600.52, plus interest from November 30, 2015 (the date of 1st Source's insurance settlement with Commerce & Industry Insurance). *Id.*, p. 3. The substantive issues in this case, as stated by Neto, are "whether Neto breached a valid and enforceable personal guarantee, and whether Neto's affirmative defenses . . . preclude enforcement of the guarantee." Defendant's Memorandum, p. 1. (The present motion to enjoin does not involve the merits of the substantive claims or defenses.) While this case was pending, 1st Source filed another lawsuit against Neto–this one in Brazil–which brings us to the

---

[1] Neto states that his plane was one of "approximately 20 aircraft [seized] as part of a specious investigation into Brazilian citizens' alleged evasion of importation tax on the aircraft by registering those planes in other countries." Defendant's Memorandum, p. 3. At least as of the date of the submission of his motion, Neto stated that "[t]he aircraft, 1st Source's collateral, remains in the possession and control of the Brazilian government[.]" *Id.*

issue before the Court. Neto says 1st Source should be enjoined from continuing what he characterizes as "vexatious and oppressive" action by pursuing a lawsuit against him in Brazil that he contends is duplicative of this case. 1st Source argues that it is merely exercising its rights under the express language of the personal guarantee that Neto signed, and that his attempt to stop the Brazilian action is the result of him "[s]ensing that his day of reckoning is at hand," implying (or at least the Court infers) that Neto owes money and is trying to avoid or forestall paying it. Plaintiff's Response, p. 1.

Neto contends that "[o]n July 4, 2016, after more than a full year of litigation before this Court, 1st Source filed a second, nearly identical action seeking a declaration of the same parties' rights under the same personal guarantee in Sao Paolo, Brazil. . . . at great expense to Neto, Plaintiff now seeks to vexatiously litigate the merits of its claim in two different forums 5,000 miles apart on two different continents. The Seventh Circuit has emphasized that antisuit injunctions are proper to avoid exactly this sort of 'absurd duplication of effort.'" Defendant's Memorandum, pp. 1-2 (quoting *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 10 F.3d 425, 431 (7th Cir. 1993)). Neto states in his memorandum that "[t]his Court has the power to issue an antisuit injunction to enjoin parties before it from litigating in foreign courts." Defendant's Memorandum, p. 5 (citations omitted). He acknowledges that "there is a circuit split regarding what a movant must show to obtain such relief." *Id.*[2] He notes that "the Seventh Circuit . . . follows a more 'liberal' or 'lax approach that places less emphasis on international comity and approves the issuance of an antisuit injunction when necessary to prevent duplicative and

---

[2] This circuit split has no relevance here, since the parties do not dispute that the Seventh Circuit standard of review for antisuit injunctions is applicable (although 1st Source contends that Neto cannot establish the elements necessary to prevail under that standard anyway).

vexatious foreign litigation and to avoid inconsistent judgments.'" *Id*. (quoting *Rosenbloom v. Barclays Bank PLC*, 2014 WL 2726136 (N.D.Ill. June 16, 2014)). Neto then sets forth the elements a movant must establish to prevail on a motion to enjoin. As Neto correctly states, "in the Seventh Circuit, a party is entitled to an antisuit injunction if: 1) the parties are the same; 2) the issues are the same; and 3) the resolution of the first action would be dispositive of the action to be enjoined." *Id*., pp. 5-6 (citing *Rosenbloom*, at * 2). Then, "the court considers whether the 'prevention of vexatious, harassing, or oppressive litigation outweighs concerns regarding international comity.'" *Id*., p. 6 (quoting *Rosenbloom, id.*).

In opposition to the motion, 1st Source maintains that Neto's memorandum is "filled with hyperbolic accusations and innuendo[,] which is not supported by objective, admissible evidence. 1st Source opposes the motion to enjoin because it has every right to pursue Neto in Brazil, where his assets are located, consistent with the terms of the Guarantee and Brazilian law." Plaintiff's Response, p. 1. The starting point, then, is to examine the relevant language in the Guarantee to see exactly what it is the parties agreed to when they signed it. The portion of the Guarantee at issue reads as follows:

> 3.02 GOVERNING LAW. THIS GUARANTEE SHALL BE GOVERNED BY
> AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE
> OF INDIANA. FOR THE PURPOSES OF ARTICLE 9, PARAGRAPH 2, OF
> BRAZILIAN FEDERAL DECREE LAW NO. 4,657, OF SEPTEMBER 4, 1942,
> THE PARTY PROPOSING THE OBLIGATIONS AGREED UPON
> HEREUNDER IS THE LENDER. IN RELATION TO ANY DISPUTE ARISING
> OUT OF OR IN CONNECTION WITH THIS GUARANTEE THE
> GUARANTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY
> AGREES THAT ALL LEGAL PROCEEDINGS IN CONNECTION WITH THIS
> GUARANTEE SHALL BE BROUGHT IN THE UNTIED STATES DISTRICT
> COURT FOR THE DISTRICT OF INDIANA LOCATED IN SOUTH BEND,
> INDIANA, OR IN THE JUDICIAL DISTRICT COURT OF ST. JOSEPH
> COUNTY, INDIANA, AND THE GUARANTOR WAIVES ALL RIGHTS TO A

TRIAL BY JURY PROVIDED HOWEVER THAT THE LENDER SHALL
HAVE THE OPTION, IN ITS SOLE AND EXCLUSIVE DISCRETION, IN
ADDITION TO THE TWO COURTS MENTIONED ABOVE, TO INSTITUTE
LEGAL PROCEEDINGS AGAINST THE GUARANTOR FOR
REPOSSESSION OF THE AIRCRAFT IN ANY JURISDICTION
WHERE THE AIRCRAFT MAY BE LOCATED FROM TIME TO TIME, OR
AGAINST THE GUARANTOR FOR RECOVERY OF MONEYS DUE TO THE
LENDER FROM THE GUARANTOR, IN ANY JURISDICTION WHERE THE
GUARANTOR MAINTAINS TEMPORARILY OR PERMANENTLY, ANY
ASSET. THE PARTIES HEREBY CONSENT AND AGREE TO BE SUBJECT
TO THE JURISDICTION OF ALL OF THE AFORESAID COURTS AND, TO
THE GREATEST EXTENT PERMITTED BY APPLICABLE LAW, THE
PARTIES HEREBY WAIVE ANY RIGHT TO SEEK TO AVOID THE
JURISDICTION OF THE ABOVE COURTS ON THE BASIS OF THE
DOCTRINE OF FORUM NON CONVENIENS.

Plaintiff's Exh. A, Guarantee, Section 3.02 (DE 53-1), pp. 5-7 (capitalization in original);

Defendant's Exh. 1 (DE 43-1), pp. 99-100.[3] 1st Source argues that "[u]nder this provision, 1st

Source has the sole discretion to exercise the option to pursue an action in Brazil ***in addition to*** a

state or federal court in Indiana." Plaintiff's Memorandum, p. 5 (boldface and italics in original).

In short, Neto argues that 1st Source is not playing by the rules and 1st Source argues that it is,

since the applicable rules are stated clearly in the Guarantee, to which Neto is a party.

Neto's motion to enjoin is based on his asseertion that 1st Source acted "vexatiously" and

"oppressively" by filing a second lawsuit against him in Brazil. This argument has a visceral

appeal at first glance–litigating two cases in different jurisdictions on two continents based on the

same underlying facts seems counterintuitive and inefficient at best and (as Neto asserts)

oppressive at worst. But Neto's protestations that 1st Source's actions are heavy handed, if not

downright unfair, ignore the express language of the Guarantee that he signed.

---

[3] The page numbers cited for the parties' exhibits are those assigned to the pages by the
Court's electronic docketing system. These page numbers appear in the upper right corner of
each document page and may not coincide with the page numbers on the original exhibits.

The parties agree on one thing–the Guarantee contains choice of law and choice of forum clauses stating that "[t]his Guarantee shall be governed by and construed in accordance with the laws of the State of Indiana[]" and that "any dispute arising out of or in connection with this Guarantee . . . shall be brought in the United States District Court for the [Northern] District of Indiana . . . or in the Judicial District of St. Joseph County, Indiana." Plaintiff's Exh. A, pp. 5-7. Neto says that's the end of it and 1st Source can pursue him only in this Court. But Neto's argument stops short, and brings to mind the words of the late Paul Harvey, who daily cautioned his listeners to "stay tuned for the rest of the story." In this case, the rest of the story is the express language in the Guarantee, which permits 1st Source to "institute legal proceedings against the Guarantor for repossession of the aircraft in any jurisdiction where the aircraft may be located from time to time, or against the Guarantor for recovery of moneys due . . . in any jurisdiction where the Guarantor maintains, temporarily or permanently, any assets." *Id.*, p. 7. And, as 1st Source repeatedly stresses, the language in Section 3.02 specifically states that 1st Source has the "sole and exclusive discretion" to pursue litigation against Neto in other jurisdictions "*in addition to*" this Court or the state court in St. Joseph County. Neto sticks to his guns, though, and argues that 1st Source is misinterpreting the language in Section 3.02. He argues that "[r]ead in context . . . this language merely enables 1st Source to seek collection on a judgment issued by this Court wherever Neto has assets. Surely this clause cannot be properly construed to permit 1st Source to file a proliferation of nearly identical lawsuits across the globe in every jurisdiction where Neto has assets." Defendant's Memorandum, pp. 12-13; Defendant's Reply (DE 56), p. 1 ("[1st Source] shrugs its shoulders at its patently vexatious conduct and argues untenably that the language of the Guarantee permits it to file innumerable identical

lawsuits against Neto in countries all over the world[.]"). Neto contends that "[t]his is neither a

fair, nor accurate reading of the Guarantee, which requires [1st Source] to bring this lawsuit in

this Court or in the state court[.]" *Id*., pp. 1-2. Perhaps it's not fair, but that's what the language

in the Guarantee states, and Neto (a self-proclaimed "international businessman") signed it,

thereby assenting to its terms. And, while the language at issue might, as Neto argues, empower

1st Source to sue him "all over the world," at least hypothetically, that's not what happened and

he is not seeking relief from such conduct.

Neto argues that the language in Section 3.02 doesn't mean what it says, and that 1st

Source's "interpretation creates internal inconsistency between the mandatory language of the

first clause in Section 3.02 [mandating that disputes be resolved in this Court or Indiana state

court] and the permissive nature of the second clause [granting 1st Source the sole discretion to

'institute legal proceedings . . . in any jurisdiction']. Specifically, 1st Source's reading causes the

permissive second clause to swallow the mandatory first clause, rendering it ineffective. For if

the second clause permits multiple identical lawsuits around the world, then there would be no

point in requiring the case to be brought in this Court in the first instance[.]" *Id*., pp. 3-4. The

Court does not accept Neto's reasoning.

It makes perfect sense, from a business standpoint, for 1st Source to include a clause in its

Guarantee permitting it to pursue legal proceedings in other jurisdictions so as to protect its

collateral–in this case a plane that Neto uses for "international business endeavors"–or to attach

other of Neto's assets if the plane itself cannot be repossessed (as is the case here, since the plane

is being held by Brazilian authorities). Neto even tacitly concedes this point, noting that "[t]he

intent of this language . . . is to allow 1st Source to 'follow Neto's assets.' . . . The purpose . . . is

to permit the Bank to repossess the mobile collateral or attach assets to satisfy a judgment 'for moneys due.' At this point, there is no judgment that moneys are due. The concern the parties sought to address with this language was not 1st Source's ability to file an action for liability under the Guarantee wherever Neto has any asset, but rather to permit 1st Source to file an action to enforce a judgment from this Court anywhere Neto has any asset." *Id*., pp. 4-5. So, argues Neto, since 1st Source has not obtained a judgment against him yet in this case, it has no right to file suit in Brazil. Put another way, he argues that the second clause of Section 3.02 only comes into play as a remedy to enforce any judgment 1st Source may obtain under the first clause. The problem is, that's not what the plain language of the Guarantee states. It makes no mention of the necessity of 1st Source obtaining a judgment against Neto before it can file suit in a foreign jurisdiction to protect its collateral or attach assets to secure the amount allegedly owed. Of course, the Guarantee could have been written to require that step before 1st Source could exercise its "sole discretion" to pursue Neto's assets in another jurisdiction, but it wasn't. And therein lies the rub.

As stated above, the parties agree that Indiana law controls as to the substantive issues in this case (and, of course, the Guarantee contains a choice of law provision). The applicable Indiana law relating to contracts is well established. "Indiana courts zealously defend the freedom to contract." *State v. Int'l Bus. Machines Corp*., 51 N.E.3d 150, 160 (Ind. 2016) (citing *Peoples Bank & Trust Co. v. Price*, 714 N.E.2d 712, 717 (Ind.Ct.App. 1999)). "'The existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract.'" *Id.* (quoting *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009)); *see also, New Welton*

*Homes v. Eckman*, 830 N.E.2d 32, 35 (Ind. 2005) (courts must not displace the contractually specified rights and remedies but "must leave to the individual parties the right to make the terms of their agreements as they deem fit and proper, and . . . enforce them as agreed upon."). Neto and 1st Source were free to negotiate the terms of their contract and it is not for this Court to second guess the meaning of unambiguous contract terms or to question the wisdom of any of the language the parties included.

Not only does the plain language of Section 3.02 of the Guarantee defeat Neto's motion for injunctive relief, he also loses because he cannot establish that the Brazilian action is vexatious or oppressive in the first place. For example, Neto protests that he "expended significant time, effort, and money" to comply with discovery requests, and to prepare for and attend a mediation on July 21, 2016. Defendant's Memorandum, pp. 3-4. Neto also states that he "traveled to Chicago and spent two full days with undersigned counsel preparing for his deposition and the mediation." *Id*., p. 4. The vexatious part comes in, according to Neto, because "[w]hile Neto litigated this matter in good faith, unbeknownst to him, 1st Source proceeded with the Brazilian action behind this Court's back, making a mockery of the discovery process and the mandatory mediation." *Id*. Neto doesn't stop there–doubling down on his accusations of vexatiousness by claiming that "1st Source's participation in the mediation was a complete sham[]" since "1st Source had already clandestinely filed" the Brazilian lawsuit "but did not deem that worthy of disclosure to Neto[.]" *Id*. Those are strong words, indeed, but 1st Source retorts by explaining that "Neto makes much of his participation in the discovery process, but that was limited to responding to one request for production of documents and being deposed. . . . The deposition was scheduled the day before mediation, so that the timing would be convenient

for Neto, not oppressive." Plaintiff's Response, p. 7. 1st Source also explains that while "Neto did participate in a mediation session conducted on July 21, 2016, in Chicago, Illinois . . . the mediation involved two cases–this case and a separate action pending [against Neto] in the Southern District of New York[.]" *Id*. 1st Source concludes by stating that "[b]ecause the mediation proceedings were confidential, and subject to Fed.R.Evid. 408, 1st Source will not comment on the proceedings other than to categorically reject Neto's assertion that '1st Source's participation in the mediation was a complete sham.'" *Id*. 1st Source contends that Neto's protestations that the filing of the Brazilian suit is oppressive because he is forced to incur greater expense "are not supported by objective evidence" and that Neto's assertions are based on "attorney argument that is not evidence." *Id*. 1st Source is correct. Neto complains about additional expense and other burdens he might have to endure to defend two lawsuits in two jurisdictions (even though he assented to jurisdiction in one and the other is his home), but complaining about potential burdens and expenses is different from presenting evidence that such burdens are oppressive to the point of warranting injunctive relief, and Neto only accomplishes the former.

 As to Neto's argument that the two cases are duplicative, in that they involve "nearly identical action[s] seeking a declaration of the same parties' rights under the same personal guarantee" (Defendant's Memorandum, p. 1), 1st Source claims that is not accurate, since "[t]he relief sought [in the Brazil case] is payment in accordance with Brazilian law, and in the absence of payment attachment of property required to cover the debt. . . . These remedies are not available to 1st Source in the United States." Plaintiff's Sur-Reply (DE 58), pp. 7-8. So while it is true, as Neto says, that the two cases involve the same parties, include the same substantive

legal issues (i.e., whether Neto breached the Guarantee and whether his defenses nullify it or excuse his breach), and that a judgment in this Court "would be determinative of those same legal issues in a Brazilian court[,]" (Defendant's Memorandum, pp. 6-7), 1st Source raises an important distinction, which reinforces its argument that its actions in Brazil are proper, in that "Brazilian law affords 1st Source the right to a prejudgment attachment of assets[]" a remedy not available through this Court since "Neto has no assets within this Court's jurisdictional reach." Plaintiff's Response, p. 6. Given that the plane was sold to a Brazilian citizen who conducts business internationally, and given that the plane is located in Brazil (regardless of the reasons), this ability to pursue a prejudgment attachment of assets represents a significant distinction. It also reinforces 1st Source's argument that the clauses in Section 3.02 of the Guarantee, read in harmony, expressly provide for such a remedy by affording 1st Source an *additional* option, that is, the option to go to court in any jurisdiction in which Neto has assets. That's what the parties agreed to, and Neto's arguments in support of enjoining 1st Source would require the Court to ignore the plain language of the Guarantee in order to right an injustice that Neto fails to establish in the first place, that is, that 1st Source filed suit in Brazil for purposes of being vexatious or oppressive. But even giving Neto the benefit of the doubt, 1st Source's conduct in filing suit in Brazil could at worst be characterized as heavy handed. Neto presents nothing to establish that 1st Source's conduct rose to the level of vexatiousness or oppressiveness, even if the express language of Section 3.02 is taken out of the equation. *See, e.g., Rosenbloom*, 2014 WL 2726136 (refusing to grant antisuit injunction where movant failed to present sufficient evidence that nonmovant's actions in filing second suit in foreign jurisdiction were vexatious or oppressive); *Cf.*, *Carr v. Tillery*, 2010 WL 1963398, at *12 (S.D. Ill. May 17, 2010) (granting

antisuit injunction where plaintiff had "extensive history of litigation against [the defendants] that includes nine separate assertions of legal claims . . . in seven years. The sheer volume of cases, many of them duplicative, demonstrates in the Court's view that [the plaintiff's motive in filing the cases has been to harass [the defendants] and to coerce them to accede in his demand . . . by raising the same claims repeatedly in new fora.").

In summary, Neto's motion to enjoin fails both because 1st Source was exercising an express contractual right and because he does not present sufficient evidence or argument to warrant enjoining the exercise of that right.

## CONCLUSION

For the reasons set forth above, the Motion to Enjoin Plaintiff From Maintaining its Litigation in Brazil filed by Defendant Joaquim Salles Leite Neto (DE 42) is DENIED.


Date: December 12, 2016.


   /s/  William C. Lee  
William C. Lee, Judge
United States District Court
Northern District of Indiana