UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| 1ST SOURCE BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 3:15-CV-261 |
| | ) |
| JOAQUIM SALLES LEITE NETO and | ) |
| WELLS FARGO BANK NORTHWEST, | ) |
| NATIONAL ASSOCIATION, solely as | ) |
| Owner Trustee under a Trust Agreement | ) |
| Dated as of June 25, 2009, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on the Emergency Motion for an Injunction Pending Appeal filed by the Defendant, Joaquim Salles Leite Neto, on January 12, 2017 (Docket Entry 72). Plaintiff 1st Source Bank filed a response in opposition on January 24 (DE 76) and Neto filed a reply on January 31 (DE 77). After seeking and receiving the Court's permission to do so, 1st Source filed a sur-reply on February 15, 2017 (DE 83), so the matter is fully briefed. For the reasons discussed below, the motion is DENIED.

## BACKGROUND

The underlying facts of this case were detailed in this Court's Opinion and Order entered on December 12 , 2016 (DE 63); *1st Source Bank v. Neto*, 2016 WL 7187247 (N.D.Ind. Dec. 12, 2016). A brief summation of those facts is sufficient now and goes something like this. Defendant Neto, a Brazilian citizen who engages in "international business affairs," entered into a trust agreement with Wells Fargo Bank to purchase an aircraft, a Dassault Falcon 2000, to use in Neto's various business endeavors. Since Neto is a foreign national he could not register the

plane in the U.S. so the aircraft was placed in a trust. Defendant Wells Fargo Bank (which is not a party to this motion) is the Owner Trustee of the trust and holds title to the aircraft. Wells Fargo, in turn, borrowed $6 million from 1st Source, pledged the aircraft as collateral, and Neto signed a Personal Guarantee backing the loan. On June 20, 2012, almost exactly three years after the purchase of the aircraft, the plane was seized by Brazilian tax authorities in connection with an investigation into an alleged scheme to avoid paying Brazilian import tax on the aircraft.[1] 1st Source brought this action on June 24, 2015, seeking to recover unpaid loan amounts it claims are past due and for which Neto is personally liable. While this case was pending, 1st Source filed a second lawsuit against Neto–this one in Brazil–which Neto characterizes as "vexatious and oppressive" as well as duplicative of this case. 1st Source argues that it is merely exercising its rights under the express language of the Personal Guarantee that Neto signed.[2] Neto argues that 1st Source should be enjoined from pursuing the action against him in Brazil, at least until his appeal of this Court's previous order is resolved by the Seventh Circuit. In its previous order, the Court denied Neto's original motion to enjoin 1st Source from pursuing the Brazilian action and it is that ruling that is pending on appeal. In support of his present motion, Neto reiterates the arguments he presented in his original motion to enjoin, to wit: 1st Source's insistence on pursuing litigation in Brazil while simultaneously litigating the same issues in this Court is

---

[1] Neto stated in a previous brief that his plane was one of "approximately 20 aircraft [seized] as part of a specious investigation into Brazilian citizens' alleged evasion of importation tax on the aircraft by registering those planes in other countries." Defendant's Memorandum in Support of Motion to Enjoin, (DE 43), p. 3.

[2] The clause in the Personal Guarantee that is the subject of this suit is Section 3.02. *See* Court's Opinion and Order of Dec. 12, 2016, pp. 4-5; Defendant's Memorandum, pp. 5-6; Plaintiff's Response, p. 2.

unnecessarily duplicative, vexatious, and contrary to the language of the Personal Guarantee that he signed. 1st Source argues that it has every right to pursue both cases simultaneously, that this Court's ruling on Neto's original motion to enjoin was properly decided, and that "Neto [now] seeks a second bite at the apple," in his attempt to forestall the Brazilian action. Plaintiff's Response, p. 1.

## STANDARD OF REVIEW

Another district court, also addressing an emergency motion for injunction pending appeal, explained as follows:

> Requests for stays or injunctions pending appeal are governed by Fed.R.Civ.P. 62(c), which provides that "[w]hile an appeal is pending from an interlocutory order . . . that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." Fed.R.Civ.P. 62(c); *see also* Fed.R.App.P. 8(a) (providing that where a stay of an injunction pending appeal has been denied by a district court, the request for a stay may be renewed in the appellate court). Such a stay is generally considered "extraordinary relief" and the moving party bears a "heavy burden of proof." *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231, 92 S.Ct. 1236, 31 L.Ed.2d 441 (1971) (Burger, C.J., in chambers). A decision concerning a stay pending appeal is similar in nature to a decision granting or denying a preliminary injunction. Specifically, to make a stay determination, a court must consider: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits" on appeal; (2) "whether the applicant will be irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985).

*Cmty. Pharmacies of Indiana, Inc. v. Indiana Family & Soc. Servs. Admin.*, 823 F.Supp.2d 876, 878 (S.D. Ind. 2011). A movant's "[f]ailure to meet the likelihood of success factor may be excused where the applicant has made a particularly strong showing on the other three factors." *E.E.O.C. v. Quad/Graphics, Inc.*, 875 F.Supp. 558, 560 (E.D.Wisc. 1995). The Seventh Circuit

summarized the applicable standard of review as follows:

> The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). Stays, like preliminary injunctions, are necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits. The goal is to minimize the costs of error. *See Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 388 (7th Cir. 1984). To determine whether to grant a stay, we consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other. *See Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007); *Sofinet v. INS*, 188 F.3d 703, 706 (7th Cir. 1999); *In re Forty-Eight Insulations*, 115 F.3d at 1300. As with a motion for a preliminary injunction, a "sliding scale" approach applies; the greater the moving party's likelihood of success on the merits, the less heavily the balance of harms must weigh in its favor, and vice versa. *Cavel*, 500 F.3d at 547-48; *Sofinet*, 188 F.3d at 707.

*In re A & F Enterprises, Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

**DISCUSSION**

In his motion, Neto mostly reiterates the arguments he made in his original motion to enjoin. That is, he contends that "the forum selection clause in . . . the [Personal] Guarantee does not permit multiple, identical, simultaneous lawsuits . . ."; that "if the forum selection clause is read to permit multiple, identical, simultaneous lawsuits around the world, then it is unenforceable[.]"; and that "the duplicative nature of the suits is enough to warrant an antisuit injunction." Defendant's Memorandum in Support of Emergency Motion for an Injunction Pending Appeal (DE 73), p. 5. Neto argues that "each of these grounds for appeal has sufficient merit to warrant granting an injunction pending appeal." *Id*. Neto then dedicates the remainder of his memorandum to rehashing these arguments, which the Court addressed in its previous opinion. The Court concluded then that Neto was not entitled to a preliminary injunction

preventing 1st Source from pursuing the Brazilian action, and he presents nothing new by way of his present motion that persuades the Court that he is entitled to injunctive relief now. (That is not to say that Neto presents nothing new at all–he does add a new wrinkle in his reply brief, which is addressed below–but it does not change the calculus.) 1st Source also reiterates its arguments from its previous briefs, asserts that this Court's findings, analysis and conclusions in its prior opinion and order were correct, and therefore "Neto has no likelihood of success on the merits." Plaintiff's Response, p. 4.

The Court reaffirms its conclusion in its previous order that Neto's arguments as to the interpretation of Section 3.02 of the Personal Guarantee are insufficient to establish "a strong likelihood" of success on the merits. That conclusion, and the Court's reasoning, are set out in the December 12, 2016, Opinion and Order and need not be repeated now. Because the Court concludes that Neto has failed to demonstrate a likelihood of success on the merits, no further discussion or analysis is necessary and his emergency motion for a stay pending appeal will be denied for that reason. That said, some brief discussion of Neto's arguments regarding considerations apart from the likelihood of his success on the merits is warranted.

The Court referenced above that Neto presented a new "wrinkle" in his reply brief and that issue warrants discussion even though, as the Court also stated, it does not change the outcome. To begin, in his memorandum in support of his motion, Neto addressed the second element of the "sliding scale" for assessing a movant's request for a stay pending appeal, i.e., whether he would be irreparably harmed if a stay is not granted. He states that he would be harmed because "[i]f the Court does not enjoin 1st Source from proceeding in Brazil pending the appeal, Neto will be denied the benefit of the selected forum–namely this District Court. . . . [I]f

the Brazilian action concludes first, it will have preclusive effect on this one, obviating the purpose of litigating in the Northern District of Indiana in the first instance and undermining the intent of the mandatory language in [Section 3.02]." Defendant's Memorandum, p. 11. Neto argues that if "1st Source proceeds in Brazil, then the Appellate Court would effectively be divested of jurisdiction [and] Neto would be denied the right to appeal [this Court's December 12 order] because the controversy could be eliminated prior to hearing the appeal." *Id*. This is a restatement of Neto's argument in his original motion that he would be irreparably harmed if forced to litigate in two jurisdictions. The Court was not persuaded by that argument then and is not persuaded now, despite Neto's attempt to ratch up the heat on the issue of harm. In his reply brief, filed on January 31, 2017, Neto alleges for the first time that if a stay is not issued he could potentially be harmed by what he terms the duplicative action because of the following:

> [A]s a matter of right under highly aggressive Brazilian procedural rules and ***based on nothing more than the service of a complaint***, Neto's assets will be seized, assigned to a third-party depositary, and potentially sold with the proceeds being provided to 1st Source–***all before the Seventh Circuit hears Neto's appeal, and before the Bank even obtains a judgment against Neto–whether here or in Brazil***.

Defendant's Reply, p. 2 (boldface and italics in original). 1st Source responded to this assertion by moving for leave to file a sur-reply. The Court granted that motion on February 15, 2017 (DE 82) and the sur-reply was docketed the same day. 1st Source argues in its sur-reply that Neto's assertion that his assets in Brazil might be subject to imminent seizure is not an accurate representation of applicable Brazilian procedural law. 1st Source claims that "the suggestion that the Brazilian is fast and very efficient is inaccurate. The case can become very complex, depending on how Neto defends that action." Plaintiff's Sur-Reply, p. 1. In support of its

6

argument 1st Source presents the affidavit of Ana Luisa Castro Cunha Derenusson, an attorney and partner at the Brazilian law firm representing 1st Source in Brazil. Counsel states in her affidavit that while Neto is correct that his assets in Brazil could be subject to seizure by the Brazilian court, the process is not necessarily as fast as Neto implies and that he is not without recourse under Brazilian law to challenge any such seizure. *Id*., Affidavit of Ana Luisa Castro Cunha Derenusson (DE 83), pp. 2-3. Counsel states that Neto could, for example, file "a motion for stay of execution (called "Embargos a Execucao") . . . in which he can argue: unfeasible or undue obligation; inaccurate attachment; excessive execution; or the Court's lack of jurisdiction." *Id*., p. 3. 1st Source also presented an affidavit from another member of the same law firm, who states that Neto has not yet been served in the Brazilian action, that 1st Source already moved to temporarily stay the Brazilian action once (at the suggestion of this Court following a hearing on Neto's original motion for injunctive relief–*see* docket entry 50), and that "[o]nce Neto is finally served, it is reasonably expected to take at least two to three years to fully conclude the Brazilian lawsuit." Plaintiff's Response, Exhibit A, Affidavit of Luis Augusto Roux Azevedo. So, argues 1st Source, while Neto's assertion is grounded in truth, it does not present the whole story, and the potential seizure of his assets in Brazil is not as easily or quickly effectuated as he implies, nor is he without recourse to challenge such a seizure in the Brazilian proceeding.

Neto's latest assertion that he would be irreparably harmed if subjected to Brazilian law regarding the payment of alleged debts (which was supported by an affidavit from his own Brazilian counsel, Thiago Luis Carballo Elias–*see* Defendant's Reply, Exhibit A, pp. 2-3) does not change anything as to the present motion. The potential harm Neto claims he might suffer is

certainly serious, given that he claims the Brazilian court could seize his assets even prior to a final judgment, but as 1st Source points out, he is not helpless to challenge a seizure if it occurs. More importantly for present purposes, this new allegation does not alter or outweigh this Court's conclusion that Neto has failed to demonstrate a strong likelihood of success on the merits of his claim in the first place.[3]

As stated above, the relief Neto seeks is "considered 'extraordinary relief' and the moving party bears a 'heavy burden of proof.'" *Cmty. Pharmacies of Indiana, Inc.*, 823 F.Supp.2d at 878 (quoting *Winston-Salem/Forsyth County Bd. of Educ.*, 404 U.S. at 1231). This Court concludes that Neto's arguments fail to carry that burden. Accordingly, his emergency motion for an injunction pending appeal will be denied. Neto can renew his motion in the appellate court pursuant to Fed.R.App.P. 8(a)(2).

---

[3] Neto also argues the third element of the analysis, i.e., "whether issuance of the stay will substantially injure the other parties interested in the proceeding." He says it won't and that "the injunction pending appeal would not deprive 1st Source of its alleged right to proceed in Brazil. If 1st Source prevails on appeal, then it may proceed accordingly, having lost nothing but an insignificant amount of time." Defendant's Reply, p. 13. 1st Source argues, however, that it *would* suffer harm if a stay is granted in that it "would be deprived of its contractual right to proceed in Brazil in order to attach Neto's assets there[]" and that this harm "significantly outweighs the non-existent, speculative harm proffered by Neto." Plaintiff's Response, p. 11. While both sides complain about the harm they might suffer if the Court imposes or refuses to impose a stay, neither side's argument on this point is a game changer. This is especially true given that Neto has recourse to address the potential seizure of his assets in Brazil (and if the Court granted the stay, 1st Source would be harmed only because its efforts in Brazil would be delayed). In other words, the alleged harm to either party does not rise to the level of "irreparable" or "grave" so as to tip the scale either way. *See, e.g.*, *Westefer v. Snyder*, 2010 WL 4000599 at *2 (S.D.Ill. Oct. 12, 2010) ("If the threat of irreparable harm is grave, a stay may be appropriate even if the appellant's prospects of success on the merits are not bright.").

## CONCLUSION

For the reasons set forth above and in this Court's Opinion and Order of December 12, 2016, the Emergency Motion for an Injunction Pending Appeal filed by the Defendant (DE 72) is DENIED.

Date: February 19, 2017.

      /s/ William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana